## Case No. 14,138.

### The TRANSIT.

[4 Ben. 138.] [1]

District Court, S. D. New York. May, 1870.

COLLISION — PILOT BOAT — DEMURRAGE — PERMANENT DETERIORATION — EXCEPTIONS.

1. Where the owners of a pilot boat, injured in a collision and repaired, were held entitled to recover the damages, held, that the pilots were not bound to hire a fruiter or a fishing smack, for the purpose of carrying on their business, while their vessel was being repaired.

[Cited in The James Farrell, 36 Fed. 501.]

2. In the absence of a market for the chartering of pilot boats, it was proper to resort to the judgment of persons acquainted with the piloting business, as to the value of the time of the vessel, based upon the employment she was in, its character and constancy, and its then recent results.

3. Such value must include only the value of the use of the boat, as a vessel, without pilots or crew or stores.

[Cited in The Emilie, Case No. 4,451; Johanssen v. The Elvina, 4 Fed. 575.]

4. Objections to the admission of evidence before a commissioner cannot be raised by exception to his report.

[Cited in The Beaver, Case No. 1,200.]

5. Where exception is taken to the method adopted by a commissioner in ascertaining the damages, either the report or the exception should show what such method was, or the exception will be unavailing.

6. Damages for permanent deterioration will be allowed, where they are clearly proved.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

·[This was a libel to recover damages caused by a collision between the A. T. Stewart and the Transit. The court decreed the damages to be divided, with a reference to ascertain the amount. Case No. 14,137. The cause is now heard on exceptions to the commissioner's report.]

W. R. Beebe, for libelants.
R. D. Benedict, for claimants.

BLATCHFORD, District Judge. In this case, the commissioner has reported, as items of the damages sustained by the libellants in the collision between their vessel, (the pilot boat A. T. Stewart,) and the claimants' vessel, demurrage for 25 days, at $60 per day, amounting to $1,500, and permanent damage or deterioration, $500. The demurrage is presumed to be for the detention of the pilot boat while she was being repaired, although the report does not so state; nor does the report state from what time to what time the demurrage is calculated, or whether the 25 days includes any period before the pilot boat reached New York, her home port, after the disaster. Any ambiguity in this respect must be taken most strongly against the party excepting to anything in respect of the item, as it was his duty to have caused the report to be made unambiguous.

The claimants have filed five exceptions to the report: (1) Because the commissioner allowed the $500 for permanent damage or deterioration, whereas he should have allowed nothing; (2) because he adopted an erroneous method of ascertaining the damages occasioned by the "loss of time" of the pilot boat; (3) because he allowed $60 a day, as damages for such "loss of time," whereas he should not have allowed over $20 a day; (4) because he admitted improper evidence on the question of such damages, under objection from the claimants; (5) because he allowed damages for 25 days' detention contrary to the evidence.

The second exception is overruled. It does not appear, by the report, what method of ascertaining the damages occasioned by the "loss of time" of the pilot-boat, the commissioner adopted. Nor does the exception state what method it refers to, or what method the claimants suppose was adopted, or what method they insist ought to have been adopted, or wherein any method that was adopted was erroneous. The exception, in order to be of avail, must be pointed to some definite and certain statement, in the report, as to the method referred to. It cannot be left for the court to infer it, from an examination of the evidence, in connection with the simple item in the report—"demurrage, 25 days, at $60 per day, $1,500." It was open to the claimants to have moved the court to make the report definite and certain, in this respect, before excepting to it.

The fourth exception must be overruled. Objections to the admission of evidence before the commissioner cannot be raised by exception to his report. The E. C. Scranton [Case No. 4,272].

As to the first exception, the item of $500 for "permanent damage or deterioration" must, I think, be allowed. Williams, who built the pilot-boat, and who also repaired her, fixes her permanent deterioration at that amount, at least. She was only five months old, and the commissioner appears to have adopted the lowest sum testified to by any witness. The weight of the evidence is decidedly with the allowance of the item.

As to the third exception, it is pointed at the per diem allowed for demurrage, namely, $60 per day, and not at the number of days allowed for. I think, on the evidence, that the allowance of $60 per day was not excessive. The only evidence as to the rate of charter of a pilot boat, was as to a rate of over $80 a day for fifteen days. The $60 allowed would seem, on the evidence, not to have included anything for the worth of the time of the pilots during the detention of the vessel, though it is impossible to tell, from the report, what it includes, as the report simply calls it "demurrage." It ought to include only the value of the use of the boat as a vessel—what, without pilots, or crew, or stores being furnished with her, she could have been chartered for to others, to use as a pilot boat. On the evidence and the report, I do not think the $60 a day is too much. The proof as to what fruiters or fishing smacks could have been hired for, is away from the case. The libellants were not bound to hire a fruiter or a fishing smack. The question is, what their pilot boat was worth, for her time. In the absence of a market for the chartering of pilot boats, the only other resort proper to be had, is to the judgment of persons acquainted with the piloting business, as to the value of the time of the vessel, based upon the employment she was in, its character and constancy, and its then recent results in the way of earnings. The Cayuga [Case No. 2,535]. Such evidence was given on the part of the libellants, and no counter-evidence was given on the part of the claimants. ·

As to the fifth exception, I am unable to ascertain, from either the report or the evidence, how the twenty-five days are computed, and the case is referred back on this exception, with leave to either party to put in further evidence, if desired, as to the number of days that ought to be allowed for, as detention. I find in the evidence, that the vessel arrived at New York, after the collision, on the 25th of May, but I do not find when her repairs were completed.